UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ERIC BELL, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:17-CV-0083-G-BK |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b)(1)(B), this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 15, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 16, should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"). In August 2013, Plaintiff filed for benefits, claiming that he became disabled in May 2011. Doc. 12-6 at 2-6. His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 12-3 at 2-4, 10-23; Doc. 12-4 at 27-28; Doc. 12-5 at 4-5, 12-14.

**B. Factual Background**

Plaintiff was 44 years old on his disability onset date, with a high school education and past relevant work experience as a forklift operator. Doc. 12-3 at 66; Doc. 12-6 at 2; Doc. 12-13 at 15. As relevant to these proceedings, in August 2013, while he was at Parkland Hospital for a follow up on his treatment for HIV with his primary provider Dr. Brendan De Marco, M.D., Plaintiff reported fatigue, which the doctor noted might be caused by depression. Doc. 12-14 at 26. Dr. De Marco noted that Plaintiff was taking an antidepressant medication at that time. Doc. 12-14 at 26.

Plaintiff underwent a consultative psychological evaluation conducted by Dr. Kristi Compton, Ph.D., in October 2013. Doc. 12-13 at 14-19. Plaintiff reported that his depression symptoms began in 2009 after his mother's death and his getting laid off from work. Doc. 12-13 at 15. His symptoms were exacerbated by his diagnosis with HIV in 2005. Doc. 12-13 at 15-16. Plaintiff reported a psychiatric hospitalization secondary to a suicide attempt three-to-four years earlier. Doc. 12-13 at 15. He stated that he was receiving treatment for depression from Dr. De Marco, who had diagnosed him with major depressive disorder and prescribed him medication that partially moderated his symptoms. Doc. 12-13 at 15, 18. Plaintiff reported feelings of daily sadness and isolation, sleep disturbance with initial and middle insomnia, decreased appetite, difficulty with focus and concentration, suicidal ideation, and memory problems. Doc. 12-13 at 15. He also reported paranoid feelings and described auditory and visual hallucinations. Doc. 12-13 at 15.

Dr. Compton reported that Plaintiff presented with a depressed mood and flat affect, but his thought processes were logical and goal directed. Doc. 12-13 at 16. Testing revealed Plaintiff's impaired immediate and delayed memory, that he was unable to perform serial threes

2

or spell "world" backwards, and that he had a limited fund of information. Doc. 12-13 at 17. Dr. Compton diagnosed Plaintiff with a severe major depressive disorder without psychotic features as well as generalized anxiety disorder. Doc. 12-13 at 17. The doctor concluded that Plaintiff's prognosis was fair and indicated that he would likely benefit from psychotherapy. Doc. 12-13 at 18.

In October 2013, an evaluating state agency medical consultant ("SAMC"), Dr. Thomas Geary, Ph.D., found that Plaintiff had a severe affective disorder, but that the impact of his limitations did not wholly compromise his capacity to function independently and effectively on a sustained basis. Doc. 12-4 at 33-34, 46. Dr. Geary opined that Plaintiff was (1) markedly limited in his ability to understand, remember, and carry out detailed instructions, Doc. 12-4 at 37-38, 50-51; and (2) moderately limited in his ability to (a) maintain attention and concentration for extended periods, (b) complete a normal workday and workweek without interruptions from psychologically-based symptoms, (c) perform at a consistent pace without an unreasonable number and length of rest periods, (d) accept instructions and respond appropriately to criticism from supervisors, (e) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and (f) respond appropriately to changes in the work setting, Doc. 12-4 at 38-39, 51-52.

In January 2014, Plaintiff's mental impairments were evaluated by SAMC Dr. Susan Posey, Psy.D. Doc. 12-4 at 63, 77. Dr. Posey agreed with Dr. Geary that Plaintiff had a severe affective disorder, Doc. 12-4 at 61, 75, and that such disorder caused him to have moderate difficulties in maintaining social functioning and concentration, persistence, or pace. Doc. 12-4 at 62, 76. In evaluating Plaintiff's mental limitations, Dr. Posey's assessment was essentially the

same as Dr. Geary's.  Doc. 12-4 at 66-67, 80-81.  She noted that Plaintiff could understand, remember, and carry out only simple instructions and make simple decisions.  Doc. 12-4 at 67.

C.     **The ALJ's Findings**

The ALJ found that Plaintiff has the severe impairments of HIV and depression, and that his depression resulted in moderate difficulties in social functioning as well as in concentration, persistence, or pace.  Doc. 12-3 at 16-17.  The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the physical demands of light work and could "at least frequently" work with coworkers and supervisors, maintain attention and concentration for extended periods, understand, remember and carry out detailed instructions, work at a production rate pace, and adapt to changes in a routine work setting.  Doc. 12-3 at 18.  The ALJ explained that "frequently" meant "there is more than slight limitation in this area, but the individual is still able to function satisfactorily."  Doc. 12-3 at 18 n.1.

With respect to Dr. Compton's evaluation, the ALJ noted that he gave it "some weight" but concluded that Plaintiff's allegations were subjective and lacking in direct evidence to show that he was getting actual treatment for depression other than a prescription medication.  Doc. 12-3 at 21.  The ALJ considered the SAMCs' assessments of Plaintiff and gave those opinions "significant weight, as their findings are consistent with the objective medical evidence taken as a whole."  Doc. 12-3 at 21.  The ALJ found that Plaintiff is unable to perform any past relevant work, but could perform other jobs available that exist in significant numbers in the national economy.  Doc. 12-3 at 22-23.

**II.  APPLICABLE LAW**

An individual is disabled under the Act if, *inter alia,* he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

4

impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their citation to the supporting evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ erred in not incorporating into his RFC assessment his findings that Plaintiff had moderate difficulties in social functioning as well as moderate difficulties with regard to concentration, persistence or pace, which findings were consistent with the SAMCs' assessments. Doc. 15 at 5-8. Additionally, Plaintiff asserts that the ALJ erred in finding that Plaintiff can "function satisfactorily," (i.e., at least frequently engage) in all the areas which the SAMCs stated Plaintiff was moderately limited and to whose opinions the ALJ claimed to give great weight. Doc. 15 at 6, 8-9, 12. Accordingly, Plaintiff contends, the ALJ effectively found no functional limitations whatsoever resulting from Plaintiff's severe depressive impairment. Doc. 15 at 6, 9. Plaintiff argues that the resulting inaccurate

hypothetical question to the vocational expert ("VE") was inaccurate, which prejudiced him. Doc. 15 at 10, 12.

Defendant responds that the ALJ's finding of the pertinent moderate limitations did not constitute the RFC assessment but rather reflected the criteria in the mental disorder Listings, which only come into play at steps 2 and 3 of the sequential evaluation process. Doc. 16-1 at 4. Thus, using the findings from the special technique in an RFC assessment or in a hypothetical question to the VE is not required. Doc. 16-1 at 4-5, 7-8. Defendant maintains that the limitations noted by the SAMCs were a summary of conclusions that they derived from the evidence of record, not their actual mental RFC assessments so there was no error in the ALJ not including their findings in his RFC assessment. Doc. 16-1 at 7. Accordingly, Defendant contends, Plaintiff has not shown that the ALJ's RFC finding failed to properly accommodate his limitations in concentration, persistence, and pace. Doc. 16-1 at 8.

Plaintiff replies that the ALJ found that the SAMCs' opinions were entitled to significant weight, but reached a different conclusion without either recognizing the conflict or explaining why he disagreed with their medical assessments. Doc. 17 at 4. Plaintiff notes that pursuant to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1985), determinations as to functional capacity should be provided through medical source statements, not speculation by the ALJ. Doc. 17 at 4.

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id*. The RFC determination falls solely to the ALJ, who alone is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of

7

credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam).

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id*. Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The court rejected the Commissioner's argument that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how small," on the claimant's ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27 (internal quotation mark omitted).

Before considering Plaintiff's arguments, the Court must determine what weight the ALJ actually gave to the SAMCs' medical opinions. In his decision, the ALJ purported to give the SAMCs' assessments "significant weight, as their findings are consistent with the objective medical evidence taken as a whole." Doc. 12-3 at 21. In formulating Plaintiff's mental RFC, however, the ALJ significantly departed from the mental limitations found by the SAMCs. For example, both doctors opined that Plaintiff was (1) markedly limited in his ability to understand, remember, and carry out detailed instructions; and (2) moderately limited in his ability to (a) maintain attention and concentration for extended periods, (b) complete a normal workday and workweek without interruptions from psychologically-based symptoms, (c) perform at a consistent pace without an unreasonable number and length of rest periods, (d) accept

instructions and respond appropriately to criticism from supervisors, (e) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and (f) respond appropriately to changes in the work setting, Doc. 12-4 at 38-39, 50-52, 66-67, 80-81.

In contrast, the ALJ found that Plaintiff had the mental RFC to "at least frequently" (1) work with coworkers and supervisors; (2) maintain attention and concentration for extended periods; (3) understand, remember, and carry out detailed instructions; (4) work at a production rate pace; and (5) adapt to changes in a routine work setting. Doc. 12-3 at 18. This assessment does not note Plaintiff's "marked" to "moderate" limitations in any of these areas, but instead suggests that he would have no difficulty understanding, remembering, and carrying out detailed instructions.

"While the ALJ may choose to reject medical sources' opinions, [he] cannot then independently decide the effects of Plaintiff's mental impairments on [his] ability to perform work-related activities, as that is prohibited by *Ripley*." *Fitzpatrick v. Colvin*, No. 15-CV-3202-D, 2016 WL 1258477, at \*8 (N.D. Tex. Mar. 31, 2016) (Fitzwater, J.) (citation omitted) (finding that the ALJ erred in making an RFC determination after rejecting the only medical opinions in the record that addressed the effect of Plaintiff's mental impairments on his ability to work); *see also Raper v. Colvin*, No. 16-CV-239-N, 2017 WL 663557, at \*5 (N.D. Tex. Jan. 3, 2017) (Stickney, J.) (collecting cases holding that an ALJ is not permitted to reject all relevant medical opinions and then independently assess a claimant's RFC without medical evidence addressing the effects of the claimant's impairments on the claimant's ability to work), *adopted by* 2017 WL 661402 (N.D. Tex. Feb. 17, 2017) (Godbey, J.); *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 803 (E.D. Tex. 2006) ("*Ripley* clarifies that an [ALJ] cannot determine from raw medical data effects of impairments on claimants' ability to work.").

9

In short, just as in *Fitzpatrick*, "the court is not able to agree that the evidence substantially supports the ALJ's conclusion that [Plaintiff] was not disabled, because there is no medical opinion supporting the ALJ's finding that [Plaintiff] has the RFC" to perform at the level the ALJ stated. *Fitzpatrick*, 2016 WL 1258477, at *8; *see also Johnson v. Astrue*, No. 12-CV-4175-BK, 2013 WL 3297594, at 5 (N.D. Tex. 2013) (Toliver, J.) (holding that reversal was warranted where the ALJ attempted to compensate for the claimant's depression and anxiety by limiting the claimant to simple, unskilled work that involved minimal contact with others, but the claimant's treating doctor found that the claimant had an "extreme loss" in his ability to perform almost all work-related activities). Also like *Fitzpatrick*, "the ALJ improperly made an independent RFC finding after declining to rely on any of the medical opinions addressing the effects of [Plaintiff's] mental impairments on his ability to work." 2016 WL 1258477, at *8 (citing *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) ("In *Ripley*, we held that an ALJ may not – without opinions from medical experts – derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.")).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc.15, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 16, should be **DENIED**, and the

Commissioner's decision should be **REVERSED,** and this case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on October 4, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to 14).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE